## NORTHERN PAC. RY. CO. v. UNITED STATES.

District Court, D. Minnesota, Third Division. August 3, 1927.

No. 1483.

Public lands ⊂═85—Reduced fare, to which government is entitled from Northern Pacific Railway, held based on percentage of aided lines in route actually used.

Plaintiff, Northern Pacific Railway Company, is under contract, originating in the land grant to its predecessor, to transport government troops over its aided line at a reduced rate. It has established a through route for its passenger trains from St. Paul to the Pacific Coast over lines owned by it, some of which are land grant lines and some not. *Held*, that the reduction to which the government is entitled over such route is based on the percentage of aided lines in the route actually used, and not on the larger percentage of such lines in alternative, but longer, routes which might be used.

At Law. Action by the Northern Pacific Railway Company against the United States. Judgment for plaintiff.

C. W. Bunn and M. L. Countryman, Jr., both of St. Paul, Minn., for plaintiff.

Lafayette French, Jr., U. S. Atty., and James A. Wharton, Asst. U. S. Atty., both of St. Paul, Minn., and O. R. McGuire, Sp. Asst. Atty. Gen., for the United States.

JOHN B. SANBORN, District Judge. The plaintiff is and has been a common carrier of freight and passengers for hire in interstate commerce, and is and has been the owner of certain lines of railway extending into and through Wisconsin, Minnesota, North Dakota, Montana, Idaho, Washington, and Oregon. One of these lines extends from Ashland, Wis., to Portland, Or. It was constructed by aid of a public land grant to the Northern Pacific Railroad Company, the plaintiff's predecessor, a corporation created by act of Congress approved July 2, 1864, entitled "An act granting lands to aid in the construction of a railroad and telegraph line from Lake Superior to Puget Sound, on the Pacific coast, by the northern route" (13 Stat. p. 365). A grant of public lands was made to the Northern Pacific Railroad Company on condition "that said Northern Pacific Railroad, or any part thereof, shall be a post route and a military road, subject to the use of the United States, for postal, military, naval, and all other government service, and also subject to such regulations as Congress may impose restricting the charges for such government transportation," and also on condition "that the said company shall not charge the government higher rates than they do individuals for like transportation and telegraphic service."

The plaintiff owns, as a part of its system, a line of railroad connecting with the line above described at Brainerd, Minn., and extending from Brainerd to Watab, Minn. This line was constructed by the Western Railroad Company of Minnesota with the aid of a grant of lands from the state of Minnesota, made under an act of Congress approved March 3, 1857, entitled "An act making a grant of land to the territory of Minne-

sota, in alternate sections, to aid in the construction of certain railroads in said territory, and granting public lands in alternate sections to the state of Alabama, to aid in the construction of a certain railroad in said state" (11 Stat. p. 195), and under an act of Congress approved March 3, 1871, entitled "An act authorizing the St. Paul & Pacific Railroad Company to change its line in consideration of a relinquishment of lands" (16 Stat. p. 588). The grant was made upon condition that the railroads and branches constructed by the aid thereof should remain public highways for the use of the government of the United States, free of all tolls or other charges upon the transportation of any property or troops of the United States. It was held by the Supreme Court of the United States that this did not mean that the railroad was required to transport free of charge government troops, or to permit the use of its equipment free of charge by the government. Lake Superior & Mississippi Railroad Co. v. United States, 93 U. S. 442, 23 L. Ed. 965.

The plaintiff operates through passenger train service between the city of St. Paul, Minn., and Seattle, Wash., over the shortest and most direct route afforded by its lines of railroad. The route west-bound consists of the non-land grant line from St. Paul to Watab, the land grant line from Watab to Gregory, Minn., the non-land grant line from Gregory to Staples, Minn., the land grant line from Staples to Palmer Junction, Wash., and the non-land grant line from Palmer Junction to Seattle, Wash. East-bound it is the same, except that between St. Cloud, Minn., and St. Paul, Minn., the leased tracks of the Great Northern are used between University Switch and St. Paul, and between Great Northern Junction, a point near St. Cloud, Minn., and Northtown Junction, a point near Minneapolis. These lines of the Great Northern are aided lines, and deduction for land grant mileage is allowed the government for travel either east or west because of that fact.

The plaintiff's lines of railroad from St. Paul to Brainerd, Minn., from Brainerd to Meeker, Wash., and from Meeker to Seattle, furnish an alternate route for transportation from St. Paul to Seattle, as do also its lines of railroad from St. Paul to Duluth, Minn., and from Duluth, Minn., to Seattle, Wash. Both of these alternate routes are longer and more indirect, but contain more land grant mileage than the route used to furnish the through service. The plaintiff maintains and has at all times maintained all of its land grant lines of railroad in suitable condition for its use and for use as post and military routes, and has furnished at all times suitable and adequate train service over said lines, as well as over its entire system; but it has not and does not run through passenger trains from St. Paul to Seattle, except over the route above referred to, and public necessity and convenience has not required that that be done. A passenger can travel from St. Paul to Seattle, via Duluth and Meeker, or via Brainerd and Meeker, but will have to change cars and pay a through fare, consisting of a combination of local fares between those points, which is higher than the through fare by the regular route, in accordance with the lawfully filed tariffs of the plaintiff.

On or about the 14th day of July, 1924, the plaintiff, on request of the defendant, transported in its through passenger service from St. Paul to Seattle, August W. Carlson, a sergeant of Marines, and on July 5, 1923, on request, carried a private of Marines in the same way over the same route. A dispute has arisen as to the fare the government is obliged to pay for the service in transporting these men, which forms the basis of this action. The plaintiff claims that the lawful through fare was $63.16; that the government was entitled to a deduction of 50 per cent. of the land grant proportion of mileage traveled, less a 3 per cent. allowance of the balance, or a net of $33.09, while the government claims that the proper fare for it was $32.29, using the same percentage bases, but figuring land grant proportion on the basis of the alternate route via Meeker and Brainerd. The government paid the $32.29 in each case, which was accepted under protest, and the plaintiff brings this suit to recover $1.60. There is no dispute as to the percentages of deduction that the government is entitled to receive, and the controversy arises solely because of the manner of figuring the land grant proportion of the total mileage; the railroad basing its figures on the actual route, and the government on the alternate route via Brainerd and Meeker.

The government's theory is that the routes from Gregory to Staples, Minn., and from Palmer Junction to Auburn, Wash., are merely alternate or lieu routes—routes established by the railroad to shorten or straighten its line—and that, in figuring the land grant mileage, the government is entitled to the same deductions as though the travel was by the alternate route, which adds the land grant mileage from Gregory to Brainerd, Brainerd to Staples, and Palmer Junction to Meeker. On the plaintiff's

theory, the land grant mileage is 1,761.43, and on the defendant's, 1,855.67.

It seems that for many years the government has made adjustment for the carrying of troops by the plaintiff upon its theory, relying on a decision of the Second Comptroller of the Treasury of April 17, 1888, holding that, "if a railroad have a line between two points aided in whole or in part, and subsequently acquire a new line or lines nonaided between those same points, the accounts for government transportation, when performed over the new line or lines, shall be stated in the same proportion of aided to nonaided miles as though the transportation were over the original line."

The practice of settling the accounts with the plaintiff on the basis claimed to be proper by the government and in accordance with the stated views of the government officers whose duty it was to make the adjustment, is entitled to much weight, but my understanding is that, for a portion of the time, at least, that the plaintiff acquiesced in it, there were in effect through rates of fare via Duluth and via Brainerd, which were exactly the same as the rate via Watab and Staples, so that it would hardly be in a position to claim the right to carry the troops over the route with the least land grant mileage and claim that the government should be required to pay more than it would be required to pay over the route actually used.

The through route of the Northern Pacific between St. Paul and the coast was not a single land grant aided system, as has been pointed out, and the obligation of the plaintiff to the government is to carry out and observe the agreements of its predecessors with respect to the transportation of government troops over the various land grant lines which make up the present system. The original line of the Northern Pacific was from Ashland, Wis., on Lake Superior, to Tacoma, Wash., on Puget Sound. Only that portion of it between Staples and Palmer Junction constitutes any part of the original land grant route of the plaintiff to the coast. The line of the old and defunct Western Railroad Company from Watab to Brainerd is the only part of that government aided road used by the plaintiff for its through route. To reach Seattle, after the line to Tacoma was built, it constructed or obtained a line from Palmer Junction, via Auburn, to Seattle, without aid of the government, so that it has a through route, not originally a government aided single system, but composed partly of lines of government aided road and partly of nonaided lines, which it has built or bought.

If the Gregory-Staples or the Palmer Junction-Auburn cut-off was a mere straightening out of the original Northern Pacific land grant system, I would think that the government's position was correct, and that the through route was an alternate route established for reasons of economy or more efficient operation; but, under the circumstances, I am unable to so hold. If there was no line from St. Paul to Staples or to Brainerd, if the original through route was St. Paul to Duluth via the old government aided St. Paul & Duluth line, and thence to Auburn over the government aided Northern Pacific line, if the plaintiff had constructed a cut-off from St. Paul to Staples without aid, and had routed its through travel over that line, and thence to Seattle, could it be claimed with any show of reason that that was a mere alternate or lieu route and that the government was entitled to base the deduction from the through fare on the proportion of land grant mileage to non-land grant mileage of the original route? It seems to me that no such contention could be sustained, and, on principle, the situation presented is identical.

Finding the facts to be as herein stated, I reach the conclusion that the plaintiff is entitled to judgment as prayed for, and it is ordered that judgment be entered accordingly. If more specific findings are desired, they may be prepared and presented. It may be understood that, in so far as this decision constitutes a denial of the requests for findings which have been made by the parties upon the ground that the evidence would support no other conclusions, exceptions are allowed.